UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALEXANDER MALDONADO PEREZ,<br><br>    Petitioner,<br><br>  v.<br><br>WARDEN OF THE CENTRAL VALLEY ANNEX, *et al*.,<br><br>    Respondents. | Case No.  1:26-cv-03538  (VC)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 6 |

Petitioner Kevin Alexander Maldonado Perez ("Petitioner") was arrested by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), on February 22, 2026. He filed this petition for a writ of habeas corpus and motion for a temporary restraining order arguing that his detention violates his constitutional rights, the Administrative Procedure Act ("APA"), and the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *See* Dkt. No. 1 ("Pet."). The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition. Dkt. 4. Respondents did not file an opposition by the Court's deadline.[1]

## I.    BACKGROUND

Petitioner entered the United States as an eleven-year-old unaccompanied minor on September 1, 2013, and was taken into DHS custody shortly thereafter. Pet. ¶ 3. He was concurrently placed in removal proceedings. *Id*. ¶ 4. Immigration authorities then designated

---

[1] Respondents did not file a response nor a request for extension of time. Thus, the Court construes the failure to timely file as a non-opposition. L.R. 230(c).

Petitioner as an unaccompanied minor and transferred him to U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR") custody. Dkt. 1-3 at 2. On September 19, 2013, ORR released petitioner to the custody of his mother, who lived in Utah at the time. *Id*.

Following his release, Petitioner established a life in Utah where he has family, completed high school, and is employed. Pet. ¶ 82; Dkt. 1-9 at 2. On December 10, 2019, United States Citizenship and Immigration Services ("USCIS") granted Special Immigrant Juvenile Status ("SIJS") to Petitioner. *Id*. ¶ 6; Dkt. 1-1. A grant of SIJS provides a noncitizen a pathway to obtain lawful permanent residence. *See* 8 U.S.C. § 1255(h). USCIS subsequently granted Petitioner deferred action for a period of four years, from February 15, 2023 to February 15, 2027 while he waited to adjust his status to that of a lawful permanent resident. Pet. ¶¶ 11, 65; *see* 8 C.F.R. § 274a.12(c)(14); *see also* 8 C.F.R. § 236.21(c)(1) (defining deferred action as "a form of enforcement discretion not to pursue the removal of certain aliens for a limited period in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience"). Petitioner currently has a pending I-485 application with USCIS to adjust his status to a lawful permanent resident. Pet. ¶ 32.

On February 21, 2026, Petitioner was arrested by Utah Highway Patrol for driving under the influence and was transferred to ICE custody. *Id*. ¶¶ 10, 12. He claims that Respondents re-opened removal proceedings against him after his arrest, despite them being previously dismissed on June 23, 2022 through a joint motion to dismiss by DHS and Petitioner. *See* Dkt. 1-5 at 2.

## II.    DISCUSSION

Petitioner asserts five claims for relief, including that his detention violates constitutional protections guaranteed to individuals with SIJS status (count I), violates the TVPRA (count II), violates his Fifth Amendment Rights under the due process clause (count III), violates the suspension clause (count IV), and violates the APA (count V). Because Petitioner's Due Process Clause claim (count III) affords Petitioner all the relief to which he is entitled—namely, release

and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach Petitioner's remaining claims.

As to his due process claim, Petitioner argues that, because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must make that showing. *See* Pet. ¶¶ 110–13. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### A.  Protected Liberty Interest

The Trafficking Victims Protection and Reauthorization Act ("TVPRA") that governs the detention of unaccompanied minors encountered at the border, like Petitioner, provides that in making custody determinations ORR should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). ORR's release of Petitioner then reflects a determination that he was not a flight risk or danger to the community when he was released to his mother. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" … so long as the minor is not dangerous …. Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." (citing 8 U.S.C. § 1232(c)(2)(A)), *aff'd* 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026).

Numerous courts have found that where an unaccompanied minor is released by the ORR to a sponsor, he obtains a liberty interest in his continued freedom, even after reaching

3

adulthood. *See, e.g.*, *Sergio S.M. v. Noem*, No. 1:25-CV-01973-KES-HBK (HC), 2025 WL 3768206, at *3 (E.D. Cal. Dec. 31, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2686866, *4–5 (E.D. Cal. Sept. 18, 2025); *F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025). Immigration officials' release of Petitioner in 2013 allowed him to live with his mother in Utah, attend high school, and work. Pet. ¶ 82; Dkt. 1-9 at 2. He also has been granted various protections by immigration authorities, including SIJS, deferred action, and work authorization while he continues to work towards legal permanent residence. Pet. ¶¶ 6–11. Under these circumstances, the Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

**B.     Due Process**

As Petitioner has a protected liberty interest in his continued freedom, the Court must next determine what process is due before the government may terminate his liberty. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil

4

removal proceedings for nearly thirteen years. Since then, he has obtained work authorization, attended school, and been granted various immigration related protections by immigration authorities. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172; *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that Petitioner has complied with all terms of his release, and has in fact been highly proactive in pursuing lawful status. *See* Pet. ¶¶ 44, 65. Though Petitioner notes that he was recently charged with driving under the influence, Respondents have not indicated that an IJ made any determinations that he was dangerous based on this fact. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward

doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

## III.    CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1.    Respondents immediately release Petitioner Kevin Alexander Maldonado Perez (A206-164-410) from their custody.

2.    Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3.    If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.    The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.


**IT IS SO ORDERED.**

Dated: May 15, 2026

_____

VINCE CHHABRIA
United States District Judge